NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GEORGE ARSENIS, et al.,

    Plaintiffs,

      v.

BLUE FOUNDRY BANCORP,

    Defendant.

Civil Action No. 24-08978 (RK) (TJB)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Defendant Blue Foundry Bancorp's Motion to Dismiss the Complaint filed by *pro se* Plaintiffs Chryssoula, George, and Spyridon Arsenis (collectively, "Plaintiffs" or the "Arsenises") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] (ECF No. 6.) Chryssoula and George Arsenis opposed Defendant's Motion on behalf of all Plaintiffs. (ECF No. 8.) Defendant Blue Foundry Bancorp ("Defendant" or "Blue Foundry Bancorp") replied, noting its intention to rest on the arguments set forth in its initial moving papers. (ECF No. 10 at 2.)[2] For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**, and the Complaint is **DISMISSED** with prejudice.

## I.   **BACKGROUND**

    As chronicled below, Plaintiffs, alone and in combination, are serial litigators whose litigation *modus operandi* is to "flood the zone." When this or another court addresses one of

---

[1] Defendant's Notice of Motion seeks dismissal under Rule 12(b)(6). (ECF No. 6.) Defendant also raises Rule 8 arguments in its brief. However, the Court declines a Rule 8 review as it dismisses the Complaint with prejudice on 12(b)(6) grounds.

[2] All page references refer to the page number listed in the ECF header. Furthermore, unless otherwise noted, all citations to ECF numbers refer to documents filed in the case at bar (No. 24-08978 (D.N.J.)).

Plaintiff's serial filings, another or more appear, equally frivolous, with the clear design to obstruct and delay other ongoing litigations brought by parties seeking recompense from the Plaintiffs, prompting a literal judicial "whack a mole." This case is but another example.

Plaintiffs' litigation antics across their many cases follow a similar pattern. One or more Arsenises receive an adverse judgment in state court and subsequently remove it to federal court. The federal court remands the case for any number of reasons, including a lack of subject matter jurisdiction or untimeliness. One of the Arsenises then files an appeal, where, shortly thereafter, that same Arsenis, or another, depending on the case, files a motion to stay pending resolution of the appeal or disposition of a writ of certiorari. The Arsenises engage in the same type of vexatious motion practice before the appellate court. Once the court dispenses with the appeal, one of the Arsenises re-removes the exact same state court case to federal court, and the cycle repeats itself.

This case represents the Arsenises' latest attempt to bypass repeated remands and delay state court proceedings. Here, they filed a complaint directly in federal court rather than seeking to remove a state court case. However, their Complaint arises from the same mortgage at issue in a state foreclosure action successfully litigated against Plaintiffs by Blue Foundry Bank. The undersigned already twice remanded that foreclosure case after Plaintiffs attempted to remove it. Now, to avoid the adverse state court judgment, Plaintiffs try something new. They name as Defendant, Blue Foundry Bancorp, the holding company, instead of the actual party in interest, its subsidiary, Blue Foundry Bank, which issued and services Plaintiffs mortgage, which a state court ruled has been in default for several years. This new but transparent litigation ploy must fail.[3]

---

[3] Plaintiffs' ploy is readily apparent as the Complaint itself oft-times refers to Blue Foundry Bank (not Bancorp) as the real party-in-interest. For example, Plaintiffs allege: "This Complaint specifically addresses Blue Foundry Bank's bad faith conduct in relation to the forbearance agreements …"  (ECF No. 1 at 12)

Before the Court reaches the case at bar, it sets forth below a history of the Arsenises' bad-faith conduct.[4]

### A. PLAINTIFF CHRYSSOULA ARSENIS'S FEDERAL LITIGATION[5]

Chryssoula Arsenis, for her part, has filed at least 12 notices of removal in this District, two of which were assigned to the undersigned.[6] In two of the cases presided over by the Honorable Michael A. Shipp, Chryssoula Arsenis removed the same case twice— ignoring Judge Shipp's first opinion remanding the case for lack of subject matter jurisdiction and untimely removal. (*See* Nos. 22-1748, 23-22822 (D.N.J.) ("*Horizon I*").) Indeed, Chryssoula Arsenis re-removed the state action "despite no material change in circumstances or arguments justifying removal," which, as Judge Shipp described, was evidence of "a desire by [Chryssoula] Arsenis to avoid state court obligations, not to bring meritorious removals to this Court." *Horizon Blue Cross Blue Shield of N.J. v. Chryssoula Arsenis* ("*Horizon II*"), No. 23-22822, 2024 WL 2750824, at *5 (D.N.J. May 29, 2024). In that case, Judge Shipp ordered Chryssoula Arsenis to show cause under the All Writs Act, 28 U.S.C. § 1651(a), as to why she should not be subjected to a pre-filing injunction enjoining her from removing cases from state court in the future. *Horizon II*, 2024 WL 2750824, at *6. He

---

[4] Since the Court may consider matters of public record at the motion to dismiss stage, it takes judicial notice of federal cases involving the Arsenises with nearly identical procedural histories. *See Pension Ben. Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

[5] In addition to the cases discussed in this Section, Chryssoula Arsenis filed state law claims against her condominium association's board members and property manager in *Arsenis Chryssoula v. Frank Edward*, No. L-004798-22 (N.J. Super. Ct.). She is also a defendant in a debt collection matter in state court. *See Discover Bank v. Chryssoula Arsenis*, No. A-2028-22 (N.J. Super. Ct.).

[6] (No. 23-23419 (D.N.J.) (RK); No. 24-08585 (D.N.J.) (RK); No. 24-04511 (D.N.J.) (MAS); No. 24-01138 (D.N.J.) (MAS); No. 23-22822 (D.N.J.) (MAS); No. 24-04561 (D.N.J.) (MAS); No. 23-02844 (D.N.J.) (MAS); No. 23-20637 (D.N.J.) (MAS); No. 23-1609 (D.N.J.) (MAS); No. 23-00879 (D.N.J.) (MAS); No. 23-00878 (D.N.J.) (MAS); No. 22-1596 (D.N.J.) (MAS).)

In addition to these removed cases, Chryssoula Arsenis has filed two complaints in federal court arising from the same underlying facts as prior state court actions. Those complaints include the case at bar and *Arsenis v. M&T Bank*, No. 23-02601 (D.N.J.) (MAS).

3

also issued the same order in three other cases before him.[7] Chryssoula Arsenis appealed Judge Shipp's remand order and never formally responded to the order to show cause, claiming that the Court was without jurisdiction to entertain a response due to her appeal. (*Horizon II*, ECF Nos. 27, 32.)

Chryssoula Arsenis engaged in "equally pernicious" behavior in several other matters before Judge Shipp over the course of a three-year period. *Id.* at *6. For example, she twice removed a different state court case before Judge Shipp in *JPMorgan Chase Bank, N.A. v. Speech & Language Center, LLC*, Nos. 22-02341, 23-02844 (D.N.J.).[8] Again, Chryssoula Arsenis clearly ignored the Court's order remanding her first case for untimely removal. (No. 22-02341 (D.N.J.), ECF No. 13 at 3; *see also* No. 23-2844 (D.N.J.), ECF No. 13.) Likewise, in *Bank of America, N.A. v. Arsenis*, Chryssoula Arsenis removed the same state court case three times despite Judge Shipp's remand orders. (Nos. 22-01596 (D.N.J.), ECF No. 6; No. 23-00878 (D.N.J.), ECF No. 7; No. 24-01138 (D.N.J.), ECF No. 6.) Separately, Chryssoula Arsenis removed a separate Bank of America state court case to Judge Shipp.[9] (No. 23-00879 (D.N.J.).) Judge Shipp also remanded this case for lack of subject matter jurisdiction and untimely removal. (No. 23-00879 (D.N.J.), ECF No. 10.)[10]

---

[7] *Horizon II*, 2024 WL 2750824, at *9-10 (stating that the pre-filing injunction would be filed in Nos. 24-1138 and 24-4511).

[8] While co-Plaintiffs Spyridon and George Arsenis were co-Defendants in this matter, they did not join in her removal.

[9] In his remand decision, Judge Shipp noted that this case was "nearly identical" to the other Bank of America actions. (No. 23-00878 (D.N.J.), ECF No. 7.)

[10] The Court notes that Chryssoula Arsenis also engages in the same litigation pattern before the Third Circuit. By way of example, when her first-filed *Horizon* action was on appeal, Chryssoula Arsenis filed no fewer than three motions to stay the remand order. (No. 22-1748 (3d Cir.), ECF Nos. 6, 16, 22.) The Third Circuit denied all three motions.

Similarly, she petitioned the Supreme Court of the United States for a writ of certiorari, which was denied on October 2, 2023. (No. 22-1748 (3d Cir.), ECF No. 24.) She then petitioned the Supreme Court for a rehearing, which was denied a month and a half later. (No. 22-1748 (3d Cir.), ECF No. 26.)

Additionally, in *M&T Bank v. Chryssoula Arsenis*, Chryssoula Arsenis removed the same case three times. Again, she ignored clear directives from the Court that it was without subject matter jurisdiction to preside over her case and that her removal was untimely. (No. 23-1609 (D.N.J.), ECF No. 13; No. 23-20637 (D.N.J.), ECF No. 11; No. 24-04561 (D.N.J.), ECF No. 8.)[11]

### B. PLAINTIFF GEORGE ARSENIS'S FEDERAL LITIGATION

George Arsenis has engaged in the same litigation stratagem as Chryssoula Arsenis. For example, George Arsenis removed the same state court case twice before the Honorable Georgette Castner. (Nos. 22-02264; 24-01097 (D.N.J.).) He filed his first notice of removal in April 2022. (No. 22-02264 (D.N.J.), ECF No. 1.) Judge Castner remanded the case, and George Arsenis appealed. (No. 22-02264 (D.N.J.), ECF Nos. 6, 8.) The Third Circuit dismissed his appeal for lack of appellate jurisdiction. (No. 22-02264 (D.N.J.), ECF No. 10.) About a year later, on February 22, 2024, George Arsenis filed a notice to remove the same state court case. (No. 24-01097 (D.N.J.), ECF No. 1.) Judge Castner remanded it a second time. (*Id.*)

Undeterred, George Arsenis has continued the same before Judge Shipp. In July 2022, George Arsenis filed a notice of removal. (No. 22-04508 (D.N.J.), ECF No. 1.) Judge Shipp remanded the case in March 2023 for lack of subject matter jurisdiction and untimely removal. (No. 22-04508 (D.N.J.), ECF No. 10.) George Arsenis appealed the remand order, and the Third Circuit dismissed the appeal for lack of appellate jurisdiction on July 13, 2023. (No. 22-04508 (D.N.J.), ECF No. 16.) Two months after his appeal's dismissal, George Arsenis removed the same

---

[11] Chryssoula Arsenis also filed a federal complaint, adding some claims to the same subject matter as the state court action that she had removed three times. Judge Shipp dismissed that complaint, finding that the Court should abstain from jurisdiction under the *Colorado River* doctrine. *Arsenis v. M&T Bank*, No. 23-02601, 2024 WL 69919, at *3–6 (D.N.J. Jan. 5, 2024). On appeal, the United States Court of Appeals for the Third Circuit per curiam vacated Judge Shipp's decision and remanded for further proceedings, reasoning that the balance of factors did not provide the exceptional circumstances required to avoid exercising jurisdiction under *Colorado River*. *Arsenis v. M&T Bank*, No. 24-1151, 2025 WL 88838, at *3 (3d Cir. Jan. 14, 2025).

state court case a second time. (No. 23-20402 (D.N.J.), ECF No. 1.) Judge Shipp remanded it again on February 15, 2024. (No. 23-20402 (D.N.J.), ECF No. 7.) George Arsenis then appealed that remand order. (No. 23-20402 (D.N.J.), ECF No. 9.) The Third Circuit again affirmed Judge Shipp's remand decision on September 19, 2024. [12] (No. 23-20402 at ECF No. 12.)

### C. Plaintiff Spyridon Arsenis's Federal Litigation

Plaintiff Spyridon Arsenis is a licensed attorney who appears in this case *pro se*, and, according to the Docket, lives at the same address as his co-Plaintiffs in Bernardsville, New Jersey.[13] He supposedly specializes in real estate and commercial real estate leasing. (No. 23-23419 (D.N.J.) ("*Blue Foundry Bank I*"), ECF No. 4-16; *see also Blue Foundry Bank I*, ECF No. 4-2 ¶ 15.) This makes sense given that the maneuvers employed in this case (and others) clearly indicate the work of someone with at least a passing familiarity with federal and appellate procedure.[14] While he is plainly named as a Plaintiff in this case, he has neither signed the Complaint nor has he joined in previous motions filed in the other federal matters in which he has been a party.

In the past, the Court has afforded Spyridon Arsenis the same leniency given to *pro se* litigants who are not attorneys. In its April Memorandum Opinion in *Blue Foundry Bank I*, the Court did so explicitly—collectively affording Chryssoula, George, and Spyridon Arsenis the

---

[12] In addition to these cases, George Arsenis has also been a party to other cases that Chryssoula Arsenis removed to federal court. *See supra* note 7.

George Arsenis also filed a petition for a writ of certiorari unrelated to any of his federal appeals, arising, instead, from a Superior Court of New Jersey, Appellate Division decision in *George Arsenis v. Borough of Bernardsville, New Jersey*. (*See* No. 24-393 (U.S.).) The Supreme Court denied his petition on December 16, 2024.

[13] As publicly available bar records show, Spyridon Arsenis is licensed to practice law in New York and has a lapsed law license in New Jersey. (*See Blue Foundry Bank I*, ECF No. 26 ("Apr. Opinion") at 6 n.3; *see also Blue Foundry Bank I*, ECF No. 4-16.)

[14] Charitably, it is concerning to see an attorney's name associated with what can only be characterized as a flagrant and vexatious abuse of the judicial process.

same benefits as *pro se* litigants. (Apr. Opinion at 6 n.3. ("The Court notes that it appears that Defendant Spyridon Arsenis is an attorney licensed to practice . . . . Nonetheless, in an abundance of caution, the Court will treat the Arsenis[es] . . . as though they are *pro se*.").) The Court need not have done so, as it is well-settled that attorney *pro se* litigants are "not accorded the same consideration as *pro se* litigants who lack substantial legal training." *Turner v. New Jersey State Police*, No. 08-5163, 2017 WL 1190917, at *7 (D.N.J. Mar. 29, 2017) (citations omitted.) Given the facts and circumstances of this case and related litigation, the Court declines to afford Spyridon Arsenis this consideration a second time.

### D. PLAINTIFFS' BLUE FOUNDRY BANK LITIGATION

The present litigation arises from the same mortgage at issue in a state foreclosure case removed twice by Plaintiffs to the undersigned. On December 28, 2023, Chryssoula Arsenis—along with her co-Plaintiffs, George and Spyridon Arsenis—removed a state foreclosure action initiated by Blue Foundry Bank against Plaintiffs. (*Blue Foundry Bank I*, ECF No. 1.) As the Court summarized in its Opinion of April 8, 2024, the state foreclosure proceedings (the same at issue in this case) involved a mortgage loan made by Blue Foundry Bank (formerly known as Boiling Springs Savings Bank) on August 28, 2013, to the Arsenises in the original principal amount of $4,073,555.00. (*Blue Foundry Bank I*, Apr. Opinion at 2.) The Arsenises executed an Adjustable Rate Note, dated August 28, 2013, in the original principal amount of $4,073,555.00 (the "Note"). (*Id.*) The Arsenises' debt has continued to accrue from September 2013 to date.

To secure performance of the loan and repayment of the Note, the Arsenises executed and delivered a mortgage, dated August 28, 2013 (the "Mortgage"), which encumbered the real property designated as Block 16, Lots 5 and 6.01 on the tax map of the Borough of Bernardsville, Somerset County, New Jersey, more commonly known as 380 Claremont Road, Bernardsville,

New Jersey 07924 (the "Bernardsville Property"). (*Id.*) The Note and Mortgage obligated the Arsenises to make monthly payments to Blue Foundry Bank. (*Id.*) From October 1, 2020 to date, the Arsenises have failed to make the required payments due under the Note and the Mortgage, resulting in a declaration of default and the entire amount due and owing. (*Id.*)

A few months later, on January 14, 2021, Defendant Blue Foundry Bancorp first came into existence.[15] On July 15, 2021, Blue Foundry Bank became the wholly owned subsidiary of this new entity[16] when Blue Foundry Bank's mutual holding company, Blue Foundry, MHC, converted to a stock holding company.[17] Thus, the named Defendant Blue Foundry Bancorp serves as both the parent and holding company of Blue Foundry Bank.

On September 26, 2022, Blue Foundry Bank initiated an action for foreclosure and possession against Plaintiffs in the Superior Court of New Jersey, Chancery Division, Somerset County, No. F-010245-22. (*Blue Foundry Bank I*, April Mem. Op. at 3.) As of that date, the amount due and owing included the principal sum of $3,493,771.50, plus unpaid interest accruing at a rate of 3.875% per annum, taxes, late fees, and other costs and fees. (*Id.*)

On November 9, 2022, Plaintiffs filed their Answer, Affirmative Defenses, Counterclaims and Jury Demand in the state foreclosure case. (*Id.*) On February 3, 2023, the Superior Court granted summary judgment for Blue Foundry Bank, struck the Answer filed by the Arsenises, dismissed the Arsenises' Counterclaim with prejudice, and referred the case to the Superior Court's Office of Foreclosure to proceed as an uncontested matter. (*Id.*)

---

[15] Entity Details, Delaware Division of Corporations, Blue Foundry Bancorp, File No. 4741336, available at https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (last visited Feb. 2, 2025).

[16] United States Securities and Exchange Commission, Blue Foundry Bancorp, Form 10-K (Dec. 31, 2021), available at https://www.sec.gov/Archives/edgar/data/1846017/000162828022005995/blue-20211231.htm (last visited Feb. 2, 2025).

[17] Corporate Overview, Blue Foundry Bancorp, https://ir.bluefoundrybank.com/overview/default.aspx (last visited Feb. 2, 2025).

After the Superior Court granted summary judgment, the Arsenises removed the state foreclosure action to federal court. (*Blue Foundry Bank I*, ECF No. 1.) Blue Foundry Bank moved to remand on various grounds, including (1) that the court lacked subject matter jurisdiction; (2) that Chryssoula Arsenis's co-defendants had not consented to removal; and (3) that removal was untimely. (*Blue Foundry Bank I*, ECF No. 4 at 4.) While this motion was pending, Plaintiffs filed a slew of motions, which the Court ultimately denied as moot in its decision remanding the case on April 8, 2024. (*Blue Foundry Bank I*, Apr. Opinion) In its remand decision, the Court found Plaintiffs' removal improper because it lacked both federal question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331–1332. Furthermore, the Court ruled that the imposition of attorney's fees and costs was appropriate in that Plaintiffs had "acted in bad faith in removing this case in order to delay foreclosure of their property." (*Blue Foundry Bank I*, Apr. Opinion at 11.)

The next day, George Arsenis filed a motion to stay execution of the remand order, (*Blue Foundry Bank I*, ECF No. 29), followed by Chryssoula Arsenis's appeal of the remand order, also filed on April 9, 2024 (*Blue Foundry Bank I*, ECF No. 30.) On July 23, 2024, the Third Circuit issued an order dismissing the appeal for lack of appellate jurisdiction. (*Blue Foundry Bank I*, ECF No. 35.) The Third Circuit noted, however, that, if the Court were to enter an order "fixing" the amount of attorney's fees and costs, that order would be appealable. (*Id.*)

The undersigned entered an Order on August 12, 2024, denying the motion to stay the remand. (*Blue Foundry Bank I*, ECF No. 36.) Eight days later, on August 30, 2024, the undersigned entered an Order awarding attorney's fees and costs against Plaintiffs in the amount of $33,890.79. (*Blue Foundry Bank I*, ECF No. 37.) George Arsenis filed a second motion to stay on September 17, 2024—this time, looking to stay the enforcement of the order awarding attorney's fees. (*Blue Foundry Bank I*, ECF No. 38.) The undersigned denied said motion on October 17, 2024. (*Blue*

*Foundry Bank I*, ECF No. 41.) On December 18, 2024, George Arsenis appealed the order awarding attorney's fees. (*Blue Foundry Bank I*, *see* ECF No. 43.) The appeal remains pending. (*See* No. 24-3370 (3d Cir.).)

On August 20, 2024, a mere eight days after the undersigned denied George Arsenis's motion to stay the execution of the remand order in *Blue Foundry Bank I*, Chryssoula and George Arsenis re-removed *the exact* same foreclosure action as a new matter before the undersigned. (No. 24-08585 (D.N.J.) ("*Blue Foundry Bank II*").) Blue Foundry Bank pointed out this re-removal in a letter dated September 9, 2024, noting Plaintiffs' "transparent bad faith effort[s] . . . to further delay the inevitable resolution" of the underlying state foreclosure action. (*Blue Foundry Bank II*, ECF No. 9 at 2.) The Court remanded the case again—this time, in a text order entered on September 16, 2024. (*Blue Foundry Bank II*, ECF No. 12). The next day, George Arsenis filed a motion to stay that order, which remains pending. (*Blue Foundry Bank II*, ECF No. 14.) Later that same day, Chryssoula Arsenis appealed the Court's text order remanding the case. (*Blue Foundry Bank II*, ECF No. 15.) That appeal remains pending.

### D.  THE PRESENT COMPLAINT[18]

On September 4, 2024, in the midst of the *Blue Foundry Bank II* remand proceedings, Chryssoula, George, and Spyridon Arsenis filed the subject Complaint against Blue Foundry Bank's holding and parent company, Blue Foundry Bancorp, invoking the Court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332.[19] Plaintiffs plead five claims arising from the same

---

[18] Plaintiff Chryssoula Arsenis recently filed for Chapter 11 bankruptcy. (No. 24-21859 (Bankr. D.N.J.).) Because she initiates this case herself, it is not subject to the automatic bankruptcy stay. *See* 11 U.S.C.A. § 362(a); *see also Boone v. Beacon Bldg. Corp.*, 613 F. Supp. 1151, 1155 (D.N.J. 1985) (stating that the automatic stay applies to actions in which the bankruptcy petitioner is in a defensive posture).

[19] There is no diversity jurisdiction here. As the Court has already ruled, complete diversity does not exist in this matter. (*Blue Foundry Bank I*, Apr. Opinion at 8 n.4.) Blue Foundry Bancorp's principal place of business—like Blue Foundry Bank—is New Jersey. (*Id.* at 8 & n.4) Therefore, the Court may only exercise subject matter jurisdiction over this action under federal question jurisdiction. 28 U.S.C. § 1331.

mortgage at issue in the state foreclosure action and *Blue Foundry Bank I* and *II*. They allege violations of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, 15 U.S.C. § 9001, *et seq.* (Count I); violations of the National Banking Act[20] (Count II); "bad faith and unfair dealing" (Count III); violations of the Truth in Lending Act ("TILA") (Count IV); and violations of the Fifth Amendment's Due Process Clause (Count V). (ECF No. 1 at 16–18.) Here, the Arsenises seek $127,700,000.00 in "statutory and punitive damages." (*Id.* at 18.)

The essence of Plaintiffs' claims center on a purported "Forbearance and Modification Agreement" (the "Forbearance Agreement") which they claim was offered to them on or about April 1, 2022, in connection with their Blue Foundry Bank mortgage. (ECF No. 1 at 7; *see also* ECF No. 12-1.) The Complaint is replete with references to this Forbearance Agreement, citing it directly and indirectly no fewer than 30 times. (ECF No. 1 at 5–14, 17–18.) By way of example, Plaintiffs claim that Blue Foundry Bank "coerced" them "into signing" this agreement, "pressuring [them] to accept a modification with harsh terms, such as a 40-year amortization and high interest payments" under "threat of immediate foreclosure during a period of economic hardship due to the COVID-19 pandemic." (ECF No. 1 at 9.) They allege that "Blue Foundry Bank did not adequately disclose the true nature of the modification terms" and "failed to properly implement the forbearance provisions." (*Id.* at 5, 11.) Plaintiffs also assert that "the Bank's actions," especially during the COVID-19 pandemic, "deprived them of a fair opportunity to negotiate the terms of the modification, effectively coercing them into an agreement under duress" and without their informed consent. (*Id.* at 11–12.) Plaintiffs claim that the "imposition of [this] unconscionable loan modification" constituted "bad faith and violated federal lending regulations," entitling them to

---

[20] While Plaintiffs fail to provide the statutory citation for the National Banking Act, the Court presumes that they seek relief under 12 U.S.C. § 24(7).

relief. (*Id.* at 7–8; *see also id.* at 18 ("The Forbearance and Modification Agreement, dated April 1, 2022 between Blue Foundry Bank and the Borrowers . . . raises significant legal concerns under federal law, including claims of unconscionablity [sic], coercion, violation of the Truth of Lending Act (TILA) and infringement on due process rights protected by the fifth Amendment."). In short, Plaintiffs clearly allege that they entered into this so-called Forbearance Agreement under duress and coercion, and seek redress for its onerous, unconscionable terms.

Curiously and contrary to what one might expect, Plaintiffs did not attach the Forbearance Agreement to the Complaint, even though this critical document is obviously integral to Plaintiffs' allegations. On January 20, 2025, Defendant sought leave to file a Supplemental Certification. (ECF No. 11 ("Supp. Cert.").) In that certification, counsel avers that neither Defendant nor or its subsidiary, Blue Foundry Bank, entered into a Forbearance Agreement with Plaintiffs. (Supp. Cert. ¶ 5.) George Arsenis objected to the filing of the Supplemental Certification and, in doing so, appended an unsigned, draft copy of the alleged Forbearance Agreement. (*See* ECF No. 12-1.) The draft agreement is replete with comment bubbles and tracked changes containing legal analysis from "SA." (*Id.*)[21] On January 23, 2025, the Court granted Defendant leave to file its Supplemental Certification and noted that the unsigned agreement filed by George Arsenis "inherently appears to confirm much of what the Supplemental Certification is certifying." (ECF No. 13.)[22]

---

[21] Based on the content of these changes, the Court presumes that "SA" is co-Plaintiff and attorney Spyridon Arsenis. (*See* ECF No. 12-1.)

[22] George Arsenis has moved for reconsideration of this Order. (ECF No. 14.) Because the Court dismisses the Complaint with prejudice for the reasons set forth below, George Arsenis's Motion for Reconsideration, (ECF No. 14), is denied as moot. *See McLean v. Sumitra*, No. 23-22842, 2024 WL 4319617, at *1 (D.N.J. Sept. 27, 2024) ("Because Plaintiff's motion is patently frivolous, the Court need not wait for an opposition, and Defendants need not expend additional time and resources to address same"); *see also Witasick v. Minnesota Mut. Life Ins.*, No. 12-3474, 2015 WL 758316, at *1 n.1 (D.N.J. Feb. 23, 2015) (declining to wait for a reply brief when "it is doubtful plaintiffs' reply would have any material impact on [the court's] decision").

In addition, and seemingly in acknowledgment of their prior litigation history, Plaintiffs include a section in their Complaint titled, "Distinction from Other Cases." (ECF No. 1 at 12.) In this section, Plaintiffs attempt to distinguish the case at bar from *Blue Foundry Bank I* and *II*, claiming that this case "specifically addresses Blue Foundry Bank's bad faith conduct in relation to the forbearance agreements [sic] and loss mitigation efforts under the CARES Act during the COVID-19 pandemic." (ECF No. 1 at 11–12.) Further, Plaintiffs argue that the claims are unique because "their individual circumstances are not subject to parallel litigation in any other court." (*Id.* at 12.)

Notwithstanding Plaintiffs' averment to the contrary, this case is nothing but a clear attempt to circumvent the Court's repeated orders of remand, this time by naming the parent/holding company which had no involvement in the foreclosure action on the basis of an allegedly coercive "agreement" that was never executed, either to contrive jurisdiction or to pass off this action as somehow unique from the others before it. Simply saying something is different does not make it so. For the foregoing reasons, this case is dismissed with prejudice.[23]

## II.   **LEGAL STANDARD**

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when

---

[23] On November 19, 2024, perhaps because Plaintiffs themselves can't keep the litany of their lawsuits straight, they added another layer of confusion by filing an Amended Complaint which is wholly unrelated to this action. (ECF No. 9.) This "Amended Complaint" involves a different defendant and alleges a different set of facts. This new complaint appears to pertain to claims at issue in the *Horizon* litigation before Judge Shipp. Under Rule 20 of the Federal Rules of Civil Procedure, plaintiffs cannot pursue unrelated claims against different defendants in the same lawsuit. Fed. R. Civ. P. 20(a)(2); *see also Gould v. California Dep't of Corr. & Rehab.*, No. 19-00015, 2019 WL 2059660, at *4 (N.D. Cal. May 9, 2019) ("Unrelated claims against different defendants must be pursued in separate lawsuits."). Accordingly, the Court deems the initial Complaint operative, (ECF No. 1), and strikes the plainly irrelevant "Amended Complaint." (ECF No. 9.)

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Public records include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, judicial opinions, and hearing transcripts." *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 632 (3d Cir. 2018) (internal citations omitted); *see also Weir v. Fed. Bureau of Investigation*, No. 23-439, 2023 WL 7018415, at *2 n.4 (W.D. Pa. Sept. 1, 2023), *report and recommendation adopted,* No. 23-439, 2024 WL 323305 (W.D. Pa. Jan. 29, 2024) (taking judicial notice of other lawsuits filed in federal court that had been dismissed with "strikingly similar" characteristics to the case at bar).

## III.    DISCUSSION

### A.    DISMISSAL OF THE COMPLAINT

Defendant Blue Foundry Bancorp moves to dismiss the Complaint under Rule 12(b)(6), arguing that it is not a party to the mortgage at issue in this case. The Court finds that dismissal of the Complaint is appropriate on this basis. Further, the Court concludes that Plaintiffs' history of

14

disregard for the Court's directives constitutes bad faith and warrants dismissal of the Complaint without leave to amend.

1. Rule 12(b)(6)

a. Naming Blue Foundry Bancorp as a Defendant is a Ruse

Plaintiffs appear to assert that Blue Foundry Bank and its holding company, Defendant Blue Foundry Bancorp, are "intertwined" due to the nature of their operations. They contend that Defendant Blue Foundry Bancorp is liable for the actions of its subsidiary, Blue Foundry Bank, simply because Blue Foundry Bank is its subsidiary. The Court disagrees.

As both the Note and Mortgage make clear, Boiling Springs Savings Bank, now Blue Foundry Bank,[24] is the mortgage lender. (*See* ECF Nos. 6-3, 6-4.)[25] Plaintiffs have pled no facts to suggest that Blue Foundry Bancorp—a holding company that is otherwise uninvolved in the day-to-day operations of its bank[26]—could be held liable for any alleged conduct in connection with the Note and Mortgage. To be sure, Plaintiffs direct the substance of their allegations to Blue Foundry Bank, not Defendant, repeatedly linking the Bank to the alleged wrongful conduct.[27] In

---

[24] Corporate Overview, Blue Foundry Bancorp, https://ir.bluefoundrybank.com/overview/default.aspx (last visited Feb. 2, 2025).

[25] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. The Court finds that it may consider the Note and Mortgage given that there is no dispute regarding their authenticity and they are "integral" to the Complaint. *In re Burlington Coat Factory Sec. Litig.*, 1104 F.3d 1410, 1426 (3d Cir. 1997).

[26] Holding Company, Black's Law Dictionary (12th ed. 2024) ("A company formed to control other companies, usu[ally] confining its role to owning stock and supervising management. It does not participate in making day-to-day business decisions in those companies.").

[27] (*E.g.*, ECF No. 1 at 9 ("The Bank's actions in pressuring the Borrowers to accept a modification with harsh terms . . . could be viewed as discriminatory and as an abuse of power."); *id.* ("The Bank's insistence on terms that are excessively burdensome and inequitable . . . is considered discriminatory under federal law."); *id.* at 10 ("The Borrowers contend that the Bank's actions constitute bad faith dealing . . . ."); *id.* at 11 ("If Blue Foundry Bank did not adequately disclose the true nature of the modification terms, the Borrowers['] . . . consent to the Agreement was not informed and thus, the contract should be rescinded."); *id.* at 11–12 ("The Borrowers assert that the Bank's actions, particularly during the Covid-19 pandemic, deprived them of a fair opportunity to negotiate the terms of the modification, effectively coercing them

15

total, the subject Complaint references Blue Foundry Bank over 30 times. In contrast, Plaintiffs mention Defendant Blue Foundry Bancorp seven times, and only twice with regard to any claim. While the sheer number of references to Defendant is not dispositive on its own, a reading of the Complaint highlights the scant facts pled against Blue Foundry Bancorp. Indeed, Blue Foundry Bancorp did not even exist until January 2021, almost eight years after the closing date on Plaintiffs' mortgage. It did not become Blue Foundry Bank's parent company until July 2021, eight months after Plaintiffs were already in default.

This action is nothing more than a ploy to evade the Court's repeated remands involving the real party in interest, Blue Foundry Bank. *Cf. Cotton Bros. Baking Co. v. Indus. Risk Insurers*, 941 F.2d 380, 388 (5th Cir. 1991) (finding that the district court did not abuse its discretion in refusing to allow the plaintiff to amend the complaint to change name of defendant from subsidiary corporation to the parent corporation in an "eleventh-hour ploy" to disclaim the existence of a contract that the plaintiff had spent over three years litigating). Because Plaintiffs cannot plead a claim for relief against Defendant simply because it is Blue Foundry Bank's holding company, the Court dismisses the Complaint. *See Walpa Const. Corp. v. Mobile Paint Mfg. Co.*, 701 F. Supp. 23, 28 (D.P.R. 1988) (dismissing a parent company as a defendant because the plaintiff could not claim that it was the "real party to the controversy simply because it [was the] parent corporation"); *see also Guar. Bank v. Great N. Ins. Co.*, No. 05-1301, 2007 WL 2477375, at *1 (E.D. Wis. Aug.

---

into an agreement under duress."); *id.* at 12 ("The Bank's demand for a 40-year amortization, high legal fees, and restrictive covenants (such as the waiver of the right to contest foreclosure) could be seen as arbitrary and unjustified . . . ."); *id.* 12–13 ("This complaint specifically addresses Blue Foundry Bank's bad faith conduct in relation to the forbearance agreements and loss mitigation efforts under the CARES Act during the COVID-19 pandemic."); *id.* at 13 ("Blue Foundry Bank failed to engage in good faith efforts to provide reasonable loss mitigation options . . . ."); *id.* at 15 ("Blue Foundry Bank's outright denial of the request to keep the matter open highlights its failure to address the Borrowers' ongoing concerns in good faith, further violating their rights under TILA and the Fifth Amendment.").)

28, 2007) ("While the Amended Complaint names The Chubb Corporation as an additional defendant, Chubb is merely a holding company and is not a real party in interest to this action.").

    b.  <u>The Forbearance Agreement is a Red-Herring</u>

Plaintiffs now rest their claims on the alleged coercive Forbearance Agreement between them and Blue Foundry Bank. (*See* ECF No. 1 at 18.) Despite its 30-plus references in the Complaint, and as is evidenced by the document recently filed by George Arsenis himself, Plaintiffs never entered into any such agreement. As the Third Circuit held in *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 103 (3d Cir. 2016), "[w]hen a plaintiff relies on a document without attaching it to the complaint, the plaintiff nevertheless has notice that the document will be at issue." The Third Circuit reasoned that "[b]ecause notice to the plaintiff is the principal reason for which courts decline to look beyond the complaint, the consideration of documents upon which the plaintiff relies does not implicate this rationale." *Id.* "[F]ailure to consider such documents would raise the countervailing concern that a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* (internal quotation marks omitted). As *Hughes* instructs, the Court finds that it may rely on the unsigned copy of the alleged agreement filed by Plaintiffs when considering Defendant's Motion. Plaintiffs' claim that their desperation prompted them to accept the allegedly onerous, draconian terms propounded by Defendant's Forbearance Agreement when, it turns out, they never entered into any such agreement is just another duplicitous and calculated attempt to circumvent the ongoing state court proceedings.

    c.  <u>None of the Federal Causes of Action are Legally Sustainable</u>

In addition, in assessing the merits of their claims, Plaintiffs fail to adequately plead any of their federal causes of action. In Count I, Plaintiffs nakedly and disjointedly assert that the

CARES Act "was designed to provide relief during the COVID-19 pandemic" and that Blue Foundry Bank's failure to "provide further loss mitigation options" despite Plaintiffs' "financial hardship could have caused significant financial damage." (ECF No. 1 at 16.) The CARES Act was passed by Congress to "provide fast and direct economic assistance for American workers, families, small businesses, and industries." *Essintial Enter. Sols., LLC v. United States Small Bus. Admin.*, No. 22-1507, 2024 WL 5248242, at *7 (M.D. Pa. Dec. 30, 2024) (internal quotation marks omitted). However, the CARES Act is "wide-ranging and includes several different titles." *Patterson v. Bank of Am., N.A.*, No. 22-01392, 2023 WL 2496884, at *3 (E.D. Mo. Mar. 14, 2023). Plaintiffs make no effort to pinpoint which title of the CARES Act is relevant to their case. They also fail to establish that any such provision would entitle them to relief or otherwise give them a private right of action. *Id.*

Indeed, "[c]ourts in this district, as well as the other districts around the country, agree that there is no implied private right of action for individuals under the CARES Act." *Thompson v. U.S. Dep't of Treasury Internal Revenue Serv.*, No. 23-03103, 2023 WL 4744751, at *2 (D.N.J. July 25, 2023) (collecting cases); *see also Patterson v. Bank of Am. N.A.*, No. 22-01392, 2023 WL 6620644, at *3 (E.D. Mo. Oct. 11, 2023) (dismissing the plaintiffs' mortgage forbearance claims under the CARES Act because "the CARES Act does not create a private right of action"); *Goodall v. Casper*, No. 22- 543, 2023 WL 3553130, at *2 (W.D. Ky. May 18, 2023) ("[C]ourts have repeatedly determined the CARES Act did not create a private right of action for violations." (internal quotation marks omitted)); *Radix L. PLC v. JPMorgan Chase Bank NA*, 508 F. Supp. 3d 515, 520 (D. Ariz. 2020) (same).[28] Thus, the Court dismisses Plaintiffs' CARES Act claim (Count I).

---

[28] Section 9056 of the CARES Act instituted a moratorium on foreclosure actions, providing that "a servicer of a Federally backed mortgage loan may not initiate any judicial or non-judicial foreclosure process, move

Similarly, Plaintiffs' National Banking Act claim (Count II) must fail as the National Banking Act also does not confer a right of action upon private parties. *Thompson v. St. Nicholas Nat'l Bank,* 146 U.S. 240, 251 (1892) (holding that "where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned *only by the United States, and not by private parties*" (emphasis added)); *Lima v. Bank of Am., N.A.*, 249 F. Supp. 3d 1308, 1314 (S.D. Fla. 2017) ("[Plaintiff's National Bank Act claim cannot provide her with any relief. The Act, 12 U.S.C. § 24, does not create any private right of action . . . ."); *see also Rhodes v. McCall-N Ltd*, No. 21- 04221, 2022 WL 3349229, at *4 (S.D. Tex. July 27, 2022), *R. & R. adopted sub nom. Rhodes v. Sterling McCall Nissan*, No. 21- 04221, 2022 WL 3349222 (S.D. Tex. Aug. 11, 2022) ("Provisions of the National Banking Act . . . may be enforced only by the government.").

Count V also fails because the "Fifth Amendment's Due Process Clause 'appl[ies] to and restrict[s] only the Federal Government and not private persons,' and does not act against a private company." *McCoy v. Mortg. Serv. Ctr.*, No. 14-3643, 2015 WL 5542501, at *3 (D.N.J. Sept. 18, 2015) (quoting *Pub. Utils. Comm'n of D.C. v. Poliak*, 343 U.S. 451, 461 (1952)). In this case, Defendant is a holding company, and, since Plaintiffs do not allege that Defendant is "a [government] actor or acted with governmental authority," Plaintiffs have "no cause of action against Defendant for a violation of the Due Process Clause." *Id.*

---

for a foreclosure judgment or order of sale, or execute a foreclosure-related eviction or foreclosure sale" during the covered period. However, the moratorium expired on July 31, 2021. *See Rawlings v. Bank of Am., N.A.*, No. 24-1033, 2024 WL 5170860, at *6 (D. Md. Dec. 18, 2024). Even if Plaintiffs had a private right of action to enforce this provision, which they do not, and had pled that their mortgage was federally backed, which they do not, Blue Foundry Bank initiated its foreclosure action against Plaintiffs in September 2022, after the CARES Act's foreclosure moratorium expired.

In Count IV, Plaintiffs seek relief under the TILA, but that claim is untimely. Although an individual may bring a private cause of action under the TILA, a plaintiff must bring the action within one year of the closing date of the loan. 15 U.S.C. § 1640(e); *see also In re Comm. Bank of N. Va.*, 622 F.3d 275, 283 (3d Cir. 2010). Plaintiffs plead that they obtained the Mortgage and Note "on or about August 28, 2013." (ECF No. 1 at 4.) Thus, as is clear from the face of the Complaint, Plaintiffs pursue this action more than a decade after the closing date of the mortgage at issue—well beyond the one-year limitations period.[29]

Furthermore, given that the basis for the Court's jurisdiction is federal question—and no such federal cause of action remains—the Court declines to exercise supplemental jurisdiction over Plaintiffs' common law claim for "bad faith and unfair dealing" (Count III). *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.")

### 2. Dismissal Without Leave to Amend

The Court's dismissal of the subject Complaint is, in its discretion, without leave to amend. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d at 1434; *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) ("While [Rule 15(a)] also requires that leave to amend should be 'freely given' a district court has the discretion to deny this request if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or

---

[29] To the extent that Plaintiffs pursue a TILA claim under 15 U.S.C. § 1639, that claim is also untimely under the three-year limitations period applicable to that provision. *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 305 (3d Cir. 2005).

dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.") Several of these categories are satisfied here.

*Ad seriatim,* Plaintiffs have demonstrated bad faith and dilatory motives. As set forth at length above, Plaintiffs have unrelentingly engaged in calculated and procedurally improper antics, designed to delay and thwart state court proceedings and judgments. In this and other matters, these dilatory tactics have required this Defendant, Plaintiffs' other adversaries, and a series of federal and state courts (trial and appellate) to expend significant time and resources, over and over again, to address Plaintiffs' bad-faith gamesmanship.

In addition to the Court's clear findings of bad faith and dilatory motives, the Court concludes that amendment would be inequitable. Here, Plaintiffs name the holding company of the plaintiff-bank in the underlying state court proceedings to mask their true motives to delay and obstruct. Defendant and its subsidiary, here and elsewhere, have been forced to expend considerable time and resources in defending against Plaintiffs' repetitive cases. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112–13 (3d Cir. 2002) ("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend under Rule 15(a) when amendment is inequitable or futile."); *Houser v. Donahoe*, No. 12-1024, 2013 WL 6838699, at *6 (W.D. Pa. Dec. 27, 2013), *aff'd sub nom. Houser v. Postmaster Gen. of U.S.*, 573 F. App'x 141 (3d Cir. 2014) (affirming the district court's dismissal of a case with prejudice and without leave to amend the complaint where it would be inequitable to require the defendant "who already once has exhaustively and successfully defended Plaintiff's grievances" to do so again); *see also Jefferson v. United States Fed. Gov't*, No. 23-3986, 2024 WL 5118443, at *2 (D.N.J. Dec. 16, 2024) (dismissing the complaint without leave to amend as "clearly frivolous"); *Senoski v. Philadelphia Bar Ass'n*, No. 17-231, 2017 WL 11319760, at *3 (W.D. Pa. Dec. 14, 2017), *R. &*

*R. adopted*, No. 17-231, 2018 WL 8809585 (W.D. Pa. Sept. 11, 2018) ("This is a frivolous claim that no amendment can save."). Defendant and the Court have "indulged" Plaintiffs' kitchen-sink pleading practices long enough, and "principles of justice" require that this "final chapter" now be "drawn to a close." *Houser*, 2013 WL 6838699, at *6. Therefore, the Court finds, in its discretion, that dismissal without leave to amend is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant Blue Foundry Bancorp's Motion to Dismiss is **GRANTED**, (ECF No. 6.); the Complaint is **DISMISSED** with prejudice, (ECF No. 1); the "Amended Complaint" is **STRICKEN**, (ECF No. 9); and George Arsenis's Motion for Reconsideration is **DENIED** as moot, (ECF No. 14). An appropriate Order will accompany this Opinion.

_____

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: February 3, 2025